# EXHIBIT "A"

Electronically FILED by Superior Court of California, County of Los Angeles on 11/07/2022 07:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

Case 2:22-cv-09468   Document 1-1   Filed 12/30/22   Page 2 of 102   Page ID #:16

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MemorialCare Medical Group d/b/a MemorialCare

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Laura Moore, on behalf of herself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Los Angeles Superior Court<br><br>Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>22STCV35388 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tina Wolfson (SBN 174806), AHDOOT & WOLFSON, PC, 2600 W. Olive Avenue, Suite 500, Burbank, CA 91505; Tel: (310) 474-9111

| DATE: 11/07/2022 | Clerk, by Sherri R. Carter Executive Officer / Clerk of Court | G. Carini | Deputy |
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

| Print this form | Save this form | Clear this form |

Electronically FILED by Superior Court of California, County of Los Angeles on 11/07/2022 07:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-4521

Gary M. Klinger (*pro hac vice* to be filed)
gklinger@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (847) 208-4585

*Attorneys for Plaintiff and the Putative Class*

[Additional counsel appear on signature page]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LAURA MOORE, on behalf of herself and all others similarly situated, | Case No.: 22STCV35388 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| MEMORIALCARE MEDICAL GROUP d/b/a MEMORIALCARE, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Laura Moore ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class Members"), by and through her attorneys, makes the following allegations based on knowledge as to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to all other matters.

## NATURE OF THE ACTION

1.      This is a data privacy class action lawsuit brought on behalf of all California residents who have accessed www.memorialcare.org, a website Defendant owns and operates, and who had their personally identifiable information and/or protected health information improperly disclosed to Facebook as a result of using Defendant's website.

2.      Defendant aids employs, agrees, and conspires with Facebook to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.

3.      Plaintiffs and Class Members used www.memorialcare.org to search and locate physicians, schedule medical appointments, and find treatment options. Defendant also encouraged its patients to use additional web features—such as the general search bar and chat feature—to enter search queries and ask specific questions regarding their medical conditions and healthcare options.

4.      Unbeknownst to Plaintiff and Class Members, and pursuant to the systematic process described herein, patients' private and protected communications with www.memorialcare.org were automatically transmitted and communicated to Facebook, alongside other information—including but not limited to individual patients' IP addresses, physical locations, and unique and persistent Facebook ID—as a result of Defendant's decision to install and use tracking pixels on its website.

5.      As a result of Defendant's unauthorized transmission of its patients' identities and online activity, including information and search results related to their private medical treatment, to a third party, Plaintiff brings this action for legal and equitable remedies resulting from the violations of the California Invasion of Privacy Act, the California Confidentiality of Medical Information Act, and for the Invasion of Privacy Under California's Constitution.

**JURISDICTION AND VENUE**

6.     The Court has personal jurisdiction over Defendant because Defendant resides in and does business in the State of California.

7.     This is a class action brought pursuant to Code of Civil Procedure section 382, and this Court has jurisdiction over the Plaintiff's claims because the amount in controversy exceeds this Court's jurisdictional minimum.

8.     Federal jurisdiction under the Class Action Fairness Action, 28 U.S.C. §1332(d), is lacking because the proposed class of plaintiffs is limited to citizens of the state of California.

9.     Venue is proper under Code of Civil Procedure sections 395(a) and 395.5 and Civil Code section 1780(c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this county. Attached to this Complaint is a Consumer Legal Remedies Act Affidavit of Venue demonstrating that this Court is the proper venue for Plaintiff's claims.

**THE PARTIES**

10.     MemorialCare Medical Group d/b/a MemorialCare ("MemorialCare" or "Defendant") is registered as a nonprofit entity with its principal place of business in California. Defendant employs approximately 11,000 individuals, with over 3,000 medical staff physicians, and, as of June 30, 2021, had an annual revenue of approximately $732,000,000. As the owner and operator of MemorialCare Long Beach Medical Center among other medical centers and operations, Defendant offers a full range of medical services, including primary and outpatient care, and treats thousands of patients each year.

11.     Plaintiff Laura Moore is an adult citizen of the state of California and is domiciled in Long Beach, California. On numerous occasions from 2016 to 2021, Plaintiff Moore accessed www.memorialcare.org on her phone and desktop and used the website to look for health care providers. Plaintiff Moore has used and continues to use the same devices to maintain and access an active Facebook account throughout the relevant period in this case. Pursuant to the systematic process described herein, MemorialCare assisted Facebook with intercepting Plaintiff Moore's communications, including those that contained personally identifiable information, protected health information, and related confidential information. MemorialCare assisted these interceptions without Plaintiff Moore's knowledge, consent, or express written authorization. By failing to receive the

requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiff Moore's personally identifiable information and protected health information.

## FACTUAL ALLEGATIONS

**A.    Background of the California Information Privacy Act ("CIPA")**

12.    The CIPA, Cal. Penal Code §§ 630, *et seq*., prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

13.    To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

- Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system; or

- Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state; or

- Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or

- Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

14.    Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc*., No. 15-cv-4062-LHK, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., No. 06-cv-5289-WHA, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

15.     Under California Penal Code section 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.     Background of the California Confidentiality of Medical Information Act ("CMIA")**

16.     Pursuant to the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq*., "A provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal. Civ. Code § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c) Is signed and dated . . .

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, MemorialCare could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3), 56.10(b)(6).

1    Cal. Civ. Code § 56.11.

2    17.    Moreover, a health care provider that maintains information for purposes covered by the

3    CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as

4    implementing a system that records and discloses online patients' personally identifiable information

5    and protected health information. Cal. Civ. Code § 56.36(c).[2] Similarly, if a negligent release occurs

6    and medical information concerning a patient is improperly viewed or otherwise accessed, the

7    individual need not suffer actual damages. Cal. Civ. Code § 56.36(b).

8    18.    "In addition to any other remedies available at law, any individual may bring an action

9    against any person or entity who has negligently released confidential information or records

10   concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal

11   damages of one thousand dollars ($1,000). In order to recover under this paragraph, it shall not be

12   necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual

13   damages, if any, sustained by the patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551,

14   (2014) (quoting Cal. Civ. Code § 56.36(b)).

15   **C.    MemorialCare's Website**

16   19.    MemorialCare is the largest health system headquartered in Orange County, California.

17   MemorialCare's network includes several hospitals (Orange Coast Medical Center, Saddleback

18   Medical Center, Long Beach Medical Center and Miller Children's & Women's Hospital Long Beach),

19   MemorialCare Medical Group and Greater Newport Physicians, MemorialCare Research,

20   MemorialCare Select Health Plan, and numerous outpatient ambulatory surgery, and specialty care

21   centers.

22   20.    MemorialCare Long Beach Medical Center, for example, is a 435-bed regional medical

23   center that offers a full range of medical services, including primary and outpatient care. MemorialCare

24

25   ─────────────────

26   [2] "Every provider of health care . . . who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the

27   information contained therein. Any provider of health care . . . who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies

28   and penalties provided under subdivisions (b) and (c) of Section 56.36." Cal. Civ. Code § 56.101(a).

Long Beach Medical Center's services, include, but are not limited to: blood donation, breast care, cancer care, diabetes care, digestive care, emergency care, gynecological care, heart and vascular care, hospice services, imaging and radiology, joint replacement, laboratory services, lung and respiratory care, mental health, nursing services, orthopedic care, palliative care, physical therapy and rehabilitation services. Defendant's coverage area includes 23 zip codes, representing 12 cities and communities, and it provides medical services to 1,059,713 people each year, based on Defendant's own estimates as of 2021.

21.    Defendant's website, www.memorialcare.org, is accessible on mobile devices and desktop computers. MemorialCare also allows users to interact with its health system via several mobile applications available for download on Android and iPhone devices.

**D.    Facebook's Platform and its Business Tools**

22.    Facebook describes itself as a "real identity platform,"[3] meaning users are allowed only one account and must share "the name they go by in everyday life."[4] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[5]

23.    In 2021, Facebook generated $117 billion in revenue.[6] Roughly 97% of that came from selling advertising space.[7]

---

[3] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021), https://www.wsj.com/articles/how-many-users-does-facebook-have-the-company-struggles-to-figure-it-out-11634846701.

[4] *Facebook Community Standards: Account Integrity and Authentic Identity*, FACEBOOK, https://transparency.fb.com/policies/community-standards/account-integrity-and-authentic-identity/ (last visited Nov. 7, 2022).

[5] *Sign Up*, FACEBOOK, https://www.facebook.com/ (last visited Nov. 7, 2022).

[6] *Meta Reports Fourth Quarter and Full Year 2021 Results*, FACEBOOK (Feb. 2, 2022), https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx.

[7] *Id.*

24.     Facebook sells advertising space by highlighting its ability to target users.[8] Facebook can target users so effectively because it surveils user activity both on and off its site.[9] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[10] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[11]

25.     Advertisers can also build "Custom Audiences."[12] Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[13] With Custom Audiences, advertisers can target existing customers directly, and they can also build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[14] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools."[15]

---

[8] *Why Advertise on Facebook, Instagram or other Meta technologies*, FACEBOOK, https://www.facebook.com/business/help/205029060038706 (last visited Nov. 7, 2022).

[9] *About Meta Pixel*, FACEBOOK, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Nov. 7, 2022).

[10] *Ad Targeting: Help your ads vind the people who will love your business*, FACEBOOK, https://www.facebook.com/business/ads/ad-targeting (last visited Nov. 7, 2022).

[11] *Core Audiences*, FACEBOOK, https://www.facebook.com/business/news/Core-Audiences (last visited Nov. 7, 2022).

[12] *About Custom Audiences*, FACEBOOK, https://www.facebook.com/business/help/744354708981227?id=2469097953376494 (last visited Nov. 7, 2022).

[13] *Ad Targeting: Help your ads vind the people who will love your business*, FACEBOOK, https://www.facebook.com/business/ads/ad-targeting (last visited Nov. 7, 2022).

[14] *About Lookalike Audiences*, FACEBOOK, https://www.facebook.com/business/help/1647490070135331?id=401668390442328 (last visited Nov. 7, 2022).

[15] *Create a customer list Custom Audience*, FACEBOOK, https://www.facebook.com/business/help/1704

(footnote continued)

26.     As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Meta, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[16] Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

27.     The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[17] Facebook's Business Tools can also track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[18] Advertisers can even create their own tracking parameters by building a "custom event."[19]

28.     One such Business Tool is the Facebook Tracking Pixel. Facebook offers this piece of code to advertisers, like MemorialCare, to integrate into their website. As the name implies, the Facebook Pixel "tracks the people and type of actions they take."[20]  When a user accesses a website

---

[16] *The Meta Business Tools*, FACEBOOK, https://www.facebook.com/help/331509497253087 (last visited Nov. 7, 2022).

56843145568?id=2469097953376494 (last visited Nov. 7, 2022); *Create a Website Custom Audience*, FACEBOOK, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited Nov. 7, 2022).

[16] *The Meta Business Tools*, FACEBOOK, https://www.facebook.com/help/331509497253087 (last visited Nov. 7, 2022).

[17] *See Meta Pixel: Advanced:* FACEBOOK, https://developers.facebook.com/docs/facebook-pixel/advanced/ (last visited Nov. 7, 2022); *see also Best practices for Meta Pixel setup*, FACEBOOK, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited Nov. 7, 2022); *App Events API*, FACEBOOK, https://developers.facebook.com/docs/marketing-api/app-event-api/ (last visited Nov. 7, 2022).

[18] *Specifications for Meta Pixel standard events*, FACEBOOK, https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (Nov. 7, 2022).

[19] *About standard and custom website events*, FACEBOOK, https://www.facebook.com/business/help/964258670337005?id=1205376682832142 (Nov. 7, 2022); *App Events API*, FACEBOOK, https://developers.facebook.com/docs/marketing-api/app-event-api/ (Nov. 7, 2022).

[20] *Retargeting*, FACEBOOK, https://www.facebook.com/business/goals/retargeting (last visited Nov. 7, 2022).

that has installed the Facebook Pixel into its code, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's websites—Defendant's own code, and Facebook's embedded code.

29.     An example illustrates the point. When an individual navigates to www.memorialcare.org and clicks on a particular physician's profile—or any other webpage installed with Facebook Pixel—the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Facebook Pixel, via cookies and embedded code, silently instructs the user's browser to duplicate and transmit the user's communications with www.memorialcare.org, sending the corresponding data to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity.

30.     After collecting and intercepting this information, Facebook processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences.

**E.      How MemorialCare Discloses Class Members Protected Health Information and Assists with Intercepting Communications**

31.     Through the Facebook Pixel, Defendant shares its patients' identities and online activity, including information and search results related to their private medical treatment.

32.     For example, when a patient visits www.memorialcare.org to search for a doctor, they may select the "Find a Provider" button, which takes them to the "Find a Provider" page.

1



*Figure 1.* Image of www.memorialcare.org's landing page.



*Figure 2.* Defendant directs patients to its "Find a Provider" webpage.

33.    If a patients selects filters or enters keywords into the search bar on the "Find a Provider" webpage, the filters and search terms are transmitted via the Facebook Pixel. Similarly, if a patient uses the websites' general search bar or chat, the terms and phrases the patient types are transmitted to

Facebook, even if they contain a patient's treatment, procedures, medical conditions, and related queries.



*Figure 3.*[21]

<hr/>

[21] On information and belief, the text users type into the search bar is transmitted and included in the web address and URL that corresponds with the search results. https://www.memorialcare.org/search?query=ovarian+cancer (last accessed Nov. 1, 2022).

34.    The "Find a Provider" page also allows patients to narrow search results based on distance from a particular location, "Hospital," "Medical Group," and the provider's "Specialty." Patients can also narrow their search results based on the provider's gender and spoken languages.



*Figures 4 & 5.*

35.    After taking any of these actions on the Find a Provider page, patients are subsequently directed to the "Provider Search Results" page, and their selections or search parameters are automatically transmitted.

*Figure 7*. Defendant's "Find a Provider" webpage identifies doctors that fit the patient's search criteria.

36.      Once a patient chooses a doctor, all of the information that patient has submitted is automatically sent directly to Facebook. On information and belief, the information transmitted to Facebook includes: (1) the patient's unique and persistent Facebook ID (c_user ID), (2) the fact that the patient clicked on a specific provider's profile page (Dr. Allison Diamant in the example below), (3) the patient's search parameters (demonstrating they specifically searched for a female doctor, specialized in Internal Medicine, who is also recognized as an "LGBTQ Champion,"), and (4) the patient's location filter (demonstrating the patient sought a provider located in Santa Monica).

+ https://www.facebook.com/tr/?id=2228363922712090&ev=Microdata&dl=https%3A%2F%2Fwww.uclahealth.or
g%2Fproviders%2Fallison-diamant&rl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2Fsearch%3Ff%255B
0%255D%3Dbook-online%253A1%26f%255B1%255D%3Dgender%253Afemale%26f%255B2%255D%3Dlgbtq-champion%253A
1%26f%255B3%255D%3Dspecialty%253A48291%26s%3Dsanta%2520monica&if=false&ts=1642513633375&cd[DataLay
er]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22Allison%20L.%20Diamant%2C%20MD%2C%20MSHS%20%7C%20Internal%
20Medicine%20-%20Santa%20Monica%2C%20CA%22%7D&cd[OpenGraph]=%7B%7D&cd[Schema.org]=%5B%5D&cd[JSON-L
D]=%5B%5D&sw=1536&sh=864&v=2.9.48&r=stable&ec=1&o=30&fbp=fb.1.1642500078069.1683984616it=164251363
1801&coo=false&dpo=LDU&dpoco=0&dpost=0&es=automatic&tm=3&exp=p1&rqm=GET

HEADERS
+ accept:            image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:   gzip, deflate, br
+ accept-language:   en-US,en;q=0.9
+ connection:        keep-alive
+ cookie:            sb=pI_mYbDjWuo9xLOujLYAqmgj; datr=pY_mYUQlzBjV0goTvf8Fc5kk; dpr=1.25;
                     c_user=1000⬛⬛⬛⬛⬛⬛⬛; xs=31%3Aixsejnh ZuCR64w%3A2%3A1642500031%3A-1%3A-1;
                     fr=0lFW0ez5zBqyosnvK.AWUQOz3OO6Xiyeb4ABdDft7tfpw.Bh5o-k.XV.AAA.0.0.Bh5o-
                     _.AWWrZTrctzQ; spin=r.1004946732_b.trunk_t.1642500037_s.1_v.2_
+ host:              www.facebook.com
+ referer:           https://www.uclahealth.org/

*Figure 8.*[22]

37. Defendant's website also includes a feature that allows patients to book appointments through a particular doctor's profile page. If a patient clicks on the "Schedule an Appointment" button, this action is communicated and shared with Facebook. Facebook classifies this event as a "SubscribedButtonClick," which indicates that the patient clicked the specific button (in order to book the appointment). Similarly, each doctor's profile page includes a direct link that allows patient to call the doctor's office, and, upon clicking the telephone number button, the patient's click is shared with Facebook.

---

[22] The screenshot above serves as example and demonstrates the types of data transmitted during an HTTP single communication session. This information is automatically sent from the patient's device to Facebook, and it reveals the patients FID (c_user field) along with each search filter the patient selected.

38.     MemorialCare's website allows online patients to request an appointment with a doctor they have not been to before by completing an online form and selecting the "Make an Appointment" button. Upon doing this, Defendant shares the patient's selection immediately with Facebook.

*Figure 9.*[23]



```
+ https://www.facebook.com/tr/?id=222836392271290&ev=SubscribedButtonClick&dl=https%3A%2F%2Fww
w.uclahealth.org%2Fproviders%2Fallison-diaman&rl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2
Fsearch%3Ff%255B0%255D%3Dbook-online%253A1%26f%255B1%255D%3Dgender%253Afemale%26f%255B2%255D%3Dl
gbtq-champion%253A1%26f%255B3%255D%3DSpecialty%253A48291%26s%3Dsanta%2520monica&if=false&ts=1642
515885628&cd[buttonFeatures]=%7B%22classList%22%3A%22button%20button--primary-alt%20button--smal
l%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%2
2%3A%22Book%20an%20Appointment%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22na
me%22%3A%22%22%2C%22value%22%3A%22%22%7D&cd[buttonText]=Book%20an%20Appointment&cd[formFeatures]
=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Allison%20L.%20Diamant%2C%20MD%2C%20MSHS%20%7C%20In
ternal%20Medicine%20-%20Santa%20Monica%2C%20CA%22%7D&cd[parameters]=%5B%5D&sw=1920&sh=1080&v=2.
9.48&r=stable&ec=2&o=30&fbp=fb.1.1642500078069.1683984461&it=1642513631801&coo=false&dpo=LDU&dpoc
o=0&dpost=0&es=automatic&tm=3&exp=p1&rqm=GET
```

HEADERS

+ accept:              image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:     gzip, deflate, br
+ accept-language:     en-US,en;q=0.9
+ connection:          keep-alive
+ cookie:              sb=pI_mYbDjWuo9xLOujLYAqmgj; datr=pY_mYUQlzBjV0goTvf8Fc5kk; dpr=1.25;
                       c_user=10007██████████; xs=31%3Aixsejnh ZuCR64w%3A2%3A1642500031%3A-1%3A-
                       1; fr=0lFW0ez5zBqyosnvK.AWUQOz3OO6Xiyeb4ABdDft7tfpw.Bh5o-
                       k.XV.AAA.0.0.Bh5o-_.AWWrZTrctzQ;
                       spin=r.1004946732_b.trunk_t.1642500037_s.1_v.2_
+ host:                www.facebook.com
+ referer:             https://www.uclahealth.org/

---

[23] The screenshot above serves as example and demonstrates the types of data transmitted during an HTTP single communication session. This information is automatically sent from the patient's device to Facebook, and it reveals the patients FID (c_user field) along with information indicating that the user booked an appointment with a particular physician.

*Figure 11.*



*Figure 12.*[24]

---

[24] Figures 11 and 12 are not specific to Defendant's web page or to Plaintiff's search queries but nonetheless demonstrate ***how*** and ***what*** is communicated via the Facebook Pixel. Importantly, this (footnote continued)

CLASS ACTION COMPLAINT

39.     Each time Defendant sends this activity data, it also discloses a patient's personally identifiable information.

40.     A user who accesses Defendant's website while logged into Facebook will transmit the c_user cookie to Facebook, which contains that user's unencrypted Facebook ID. When accessing memorialcare.org, for example, Facebook receives even cookies, six of which are visible here:

| presence | C%7B... | .facebook.com |
| xs | 3%3Ar... | .facebook.com |
| c_user | 10003... | .facebook.com |
| fr | 00ZpYJ... | .facebook.com |
| datr | MalzYj... | .facebook.com |
| sb | qqAzY... | .facebook.com |

*Figure 14*

41.     When a visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies.[25]

| fr | 00Zp... | .facebook.com |
| wd | 1156... | .facebook.com |
| sb | qqAz... | .facebook.com |
| datr | Malz... | .facebook.com |

*Figure 15*

42.     The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[26] Facebook, at a minimum, uses the fr cookie to identify users.[27] At each stage, Defendant also utilizes

occurred without Plaintiff's knowledge or consent because patients' communications with www.memorialcare.org are simultaneously duplicated and transmitted to Facebook, alongside their unique Facebook ID (c_user ID), during a single HTTP communication session.

[25] Not pictured here and in the preceding image is the _fbp cookie, which is transmitted as a first-party cookie.

[26] *Facebook Ireland Ltd: Report of Re-Audit*, DATA PROTECTION COMMISSIONER (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.

[27] *Cookies Policy*, FACEBOOK, https://www.facebook.com/policy/cookies/ (last visited Nov. 7, 2022).

- 17 -

the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a user.[28]

43. The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook or is otherwise used to visit the same website.[29] If that happens, the time resets, and another 90 days begins to accrue.[30]

44. The Facebook Tracking Pixel uses both first and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., www.memorialcare.org.[31] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"— i.e., Facebook.[32] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

45. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles, and, as shown in the above figures, Defendant sends these identifiers alongside the event data.

46. Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to disclose her personally identifiable information and protected health information and assist with intercepting her communications. Plaintiff was never provided with any written notice that Defendant discloses its website users' protected health information, nor was she provided any means of opting out of such disclosures. Defendant nonetheless knowingly disclosed Plaintiff's protected health information to Facebook.

---

[28] *Id*.

[29] *Id.*

[30] Confirmable through developer tools.

[31] *First-party cookie*, PC MAG, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited Nov. 7, 2022). This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[32] *Id.* This is also confirmable by tracking network activity.

47.     By law, Plaintiff is entitled to privacy in her protected health information and confidential communications. MemorialCare deprived Plaintiff of her privacy rights when it: (1) implemented a system that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications, personally identifiable information, and protected health information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party eavesdropper; and (3) undertook this pattern of conduct without notifying Plaintiff and without obtaining her express written consent. Plaintiff did not discover until October of 2022 that Defendant disclosed her personally identifiable information and protected health information to Facebook and assisted Facebook with intercepting her communications.

## CLASS ACTION ALLEGATIONS

48.     **Class Definition:** Pursuant to section 382 of the Code of Civil Procedure, Plaintiff brings this action on behalf of herself and other similarly situated individuals (the "Class"), defined as California citizens who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook through the use of the Facebook Pixel tracking tool as a result of or in connection with using www.memorialcare.org. Plaintiff reserves the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

49.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

50.     Excluded from the Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer or director of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

51.     **Numerosity/Ascertainability**. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in

1   the Class. The identity of such membership is readily ascertainable from MemorialCare's records and

2   non-party Facebook's records.

3         52.   **Typicality**. Plaintiff's claims are typical of the claims of the Class because Plaintiff used

4   www.memorialcare.org and had her personally identifiable information and protected health

5   information disclosed to Facebook without her express written authorization or knowledge. Plaintiff's

6   claims are based on the same legal theories as the claims of other Class members.

7         53.   **Adequacy**. Plaintiff is fully prepared to take all necessary steps to represent fairly and

8   adequately the interests of the Class members. Plaintiff's interests are coincident with, and not

9   antagonistic to, those of the members of the Class. Plaintiff is represented by attorneys with experience

10   in the prosecution of class action litigation generally and in the emerging field of digital privacy

11   litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on

12   behalf of the members of the Class.

13         54.   **Common Questions of Law and Fact Predominate/Well Defined Community of**

14   **Interest**. Questions of law and fact common to the members of the Class predominate over questions

15   that may affect only individual members of the Class because Defendant has acted on grounds generally

16   applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct.

17   Questions of law and fact common to the Classes include:

18         (a)   Whether Defendant intentionally tapped the lines of internet communication between

19               patients and their medical providers;

20         (b)   Whether Defendant's website surreptitiously records personally identifiable

21               information, protected health information, and related communications and

22               subsequently, or simultaneously, discloses that information to Facebook;

23         (c)   Whether Facebook is a third-party eavesdropper;

24         (d)   Whether Defendant's disclosures of personally identifiable information, protected

25               health information, and related communications constitute an affirmative act of

26               communication;

27

28

(e)    Whether Defendant's conduct, which allowed Facebook—an unauthorized person—to view Plaintiff's and Class members' personally identifiable information and protected health information, resulted in a breach of confidentiality;

(f)    Whether Defendant violated Plaintiff's and Class members' privacy rights by using Facebook's tracking pixel to record and communicate online patients' FIDs alongside their confidential medical communications;

(g)    Whether Plaintiff and Class members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

(h)    Whether Defendant's actions violate Plaintiff's and Class members' privacy rights as provided by the California Constitution;

55.    **Superiority**. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of the California Invasion of Privacy Act,
Cal. Penal Code § 631**

56.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and bring this Count individually and on behalf of the members of the Class.

57.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose.

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of

- 21 -

eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

58.     California penal Code section 631(a) provides, in pertinent part:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or *who aids, agrees with, employs, or conspires* with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

Cal. Penal Code § 631(a) (emphasis added).

59.     A defendant must show it had the consent of *all* parties to a communication.

60.     At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's and Class Members' internet communications while accessing www.memorialcare.org. They intercepted these communications without authorization and consent from Plaintiff and Class Members.

61.     Defendant, when aiding and assisting Facebook's eavesdropping, intended to help Facebook learn some meaning of the content in the URLs and the content the visitor requested.

62.     The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the Facebook Tracking Pixel falls under the broad catch-all category of "any other manner":

a.      The computer codes and programs Facebook used to track Plaintiff's and the Class Members' communications while they were navigating memorialcare.org;

b.      The Plaintiff's and Class Member's browsers;

c.      The Plaintiff's and Class Members' computing and mobile devices;

d.      Facebook's web and ad servers;

- 22 -

e.     The web and ad-servers from which Facebook tracked and intercepted the Plaintiff's and Class Members' communications while they were using a web browser to access or navigate the memorialcare.org;

f.     The computer codes and programs used by Facebook to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using a browser to visit Defendant's website; and

g.     The plan Facebook carried out to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit Defendant's website.

63.     Defendant failed to disclose that it is used Facebook Pixel specifically to track and automatically transmit its patients' private and confidential communications to a third party, i.e., Facebook. Moreover, the Patient Privacy Notice states that sharing information about patients for marketing or sale of health information requires patients' authorization (as it does for every disclosure of health information not provided for under the Privacy Policy).

64.     The patient communication information that Defendant transmitted using Facebook Pixel, such as doctor appointment booking information, constitutes protected health information.

65.     As demonstrated hereinabove, Defendant violated CIPA by aiding and permitting third parties to receive its patients' online communications through its website without their consent.

66.     By disclosing Plaintiff's and the Class's Private Health Information, Defendant violated Plaintiff's and Class Members' statutorily protected right to privacy.

67.     As a result of the above violations, Defendant is liable to the Plaintiff and other Class Members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Pursuant to CIPA Section 637.2, any person who has been injured by a violation of CIPA may recover $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options). Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiffs has suffered, or be threatened with, actual damages."

68.     Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

**COUNT II**
**Violations Of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code § 56.10**

69.     Under the California Confidentiality of Medical Information Act ("CMIA") section 56.10, providers of health care are prohibited from disclosing medical information relating to their patients, without a patient's authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual . . . ." Cal. Civ. Code § 56.05.

70.     Plaintiff and Class Members are patients, and, as a health care provider, Defendant has an ongoing obligation to comply with the CMIA's requirements.

71.     As set forth hereinabove, Facebook ID is an identifier sufficient to allow identification of an individual. Along with patients' Facebook ID, MemorialCare discloses to Facebook several pieces of information regarding its patients' use of its website, which includes, but is not limited to: patient medical conditions, medical concerns, treatment patients are seeking, doctor appointments, medical specialty of the doctor(s) searched for by patients, and patient information regarding COVID-19.

72.     This patient information is derived from a provider of health care regarding patients' medical treatment and physical condition. Accordingly, it constitutes medical information pursuant to the CMIA.

73.     As demonstrated hereinabove, MemorialCare failed to obtain its patients' authorization for the disclosure of medical information and failed to disclose in its Privacy Policy and Privacy Practices that it shares protected health information for marketing purposes.

74.     Pursuant to CMIA section 56.11, a valid authorization for disclosure of medical information must be (1) "clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization" (2) signed

- 24 -

and dated by the patient or his representative (3) state the name and function of the third party that receives the information (4) state a specific date after which the authorization expires. Accordingly, the information set forth in MemorialCare's Privacy Policy, Patient Privacy Notice, and Terms of Use do not qualify as a valid authorization.

75. Based on the above, MemorialCare violated the CMIA by disclosing its patients' medical information with Facebook along with the patients' Facebook ID.

76. Under the CMIA, a patient may recover compensatory damages, punitive damages not to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any violating disclosure of medical information. Alternatively, a patient may recover nominal damages of $1,000 for any negligent release of medical information.

<u>COUNT III</u>
**Invasion of Privacy Under California's Constitution**

77. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the members of the proposed Class.

78. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

79. At all relevant times, by using Facebook's tracking pixel to record and communicate patients' FIDs alongside their confidential medical communications, MemorialCare intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

80. Plaintiff and Class Members had a reasonable expectation that their communications, identity, health information, and other data would remain confidential and that MemorialCare would not install wiretaps on www.memorialcare.org.

81. Plaintiff and Class Members did not authorize MemorialCare to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

82.     This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

83.     Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## RELIEF REQUESTED

84.     Plaintiff, on behalf of herself and the proposed Class, respectfully requests that the Court grant the following relief:

(a)     Certification of this action as a class action and appointment of Plaintiff and Plaintiff's counsel to represent the Class;

(b)     A declaratory judgment that Defendant violated the California Invasion of Privacy Act, Cal. Penal Code § 631(a);

(c)     A declaratory judgment that Defendant violated the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*;

(d)     A declaratory judgment that Defendant violated Plaintiff's and Class Members' privacy rights as provided at common law and pursuant to the California Constitution;

(e)     An order enjoining Defendant from engaging in the unlawful practices and illegal acts described herein;

(f)     For actual or statutory damages;

(g)     For punitive damages, as warranted, in an amount to be determined at trial;

(h)     For prejudgment interest on all amounts awarded;

(i)     For injunctive relief as pleaded or as the Court may deem proper;

(j)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to California Code of Civil Procedure section 1021.5 and/or other applicable law; and

(k)     Such other and further relief as the Court may deem appropriate.

1

**DEMAND FOR JURY TRIAL**

2        85.   Plaintiff, on behalf of herself and the proposed Class, demand a trial by jury for all of

3   the claims asserted in this Complaint so triable.

4

Dated: November 7, 2022

5                                                        Tina Wolfson (SBN 174806)

6                                                        twolfson@ahdootwolfson.com
                                                         Robert Ahdoot (SBN 172098)
7                                                        rahdoot@ahdootwolfson.com
                                                         Christopher E. Stiner (SBN 276033)
8                                                        cstiner@ahdootwolfson.com
                                                         **AHDOOT & WOLFSON, PC**
9                                                        2600 W. Olive Avenue, Suite 500
                                                         Burbank, CA 91505
10                                                       Telephone: (310) 474-9111
                                                         Facsimile:  (310) 474-4521
11

12                                                       Andrew W. Ferich*
                                                         aferich@ahdootwolfson.com
13                                                       **AHDOOT & WOLFSON, PC**
                                                         201 King of Prussia Road, Suite 650
14                                                       Radnor, PA 19087
                                                         Telephone: (310) 474-9111
15                                                       Facsimile:  (310) 474-4521

16                                                       Gary M. Klinger*

17                                                       gklinger@milberg.com
                                                         **MILBERG COLEMAN BRYSON**
18                                                       **PHILLIPS GROSSMAN, PLLC**
                                                         227 W. Monroe Street, Suite 2100
19                                                       Chicago, IL 60606
                                                         Telephone: (847) 208-4585
20

21                                                       Nick Suciu III*
                                                         nsuciu@milberg.com
22                                                       **MILBERG COLEMAN BRYSON**
                                                         **PHILLIPS GROSSMAN, PLLC**
23                                                       6905 Telegraph Rd., Suite 115
                                                         Bloomfield Hills, MI 48301
24                                                       Telephone: (313) 303-3482
                                                         Facsimile:  (865) 522-0049
25

26                                                       *Pro hac vice* application forthcoming

27                                                       *Attorneys for Plaintiff and the Putative Class*

28

Electronically FILED by Superior Court of California, County of Los Angeles on 11/07/2022 07:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

Case 2:22-cv-09468  Document 1  Filed 12/30/22  Page 31 of 102  Page ID #:45

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Tina Wolfson (SBN 174806)<br>AHDOOT & WOLFSON, PC, 2600 W. Olive Avenue, Suite 500, Burbank, CA 91505<br><br>TELEPHONE NO.: (310) 474-9111  FAX NO. (Optional): (310) 474-4521<br>E-MAIL ADDRESS: twolfson@ahdootwolfson.com<br>ATTORNEY FOR (Name): Plaintiff Laura Moore | FOR COURT USE ONLY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Stanley Mosk Courthouse |

| |
|---|
| CASE NAME:<br>Laura Moore v. MemorialCare Medical Group d/b/a MemorialCare |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** [ ] **Limited**<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 22STCV35388<br><br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46)<br>**Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort**<br>[ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23)<br>**Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[x] Other non-PI/PD/WD tort (35)<br>**Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37)<br>**Real Property**<br>[ ] Eminent domain/Inverse<br>condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26)<br>**Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>**Enforcement of Judgment**<br>[ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint (not specified above) (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition (not specified above) (43) |

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): 3 - Violations of Cal. Penal Code § 631, Cal. Civ. Code § 56.10, Invasion of Privacy
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 7, 2022

Tina Wolfson
_____
(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Moore v. MemorialCare Medical Group d/b/a MemorialCare | 22STCV35388 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

LASC CIV 109 Rev. 10/22
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Moore v. MemorialCare Medical Group d/b/a MemorialCare | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☑ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Moore v. MemorialCare Medical Group d/b/a MemorialCare | |

| | | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|---|
| **Contract** (Continued) | | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | | ☐ 2602 Quiet Title | 2, 6 |
| | | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| Moore v. MemorialCare Medical Group d/b/a MemorialCare | |

| | **A**<br>Civil Case Cover<br>Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2003 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4304 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE<br>Moore v. MemorialCare Medical Group d/b/a MemorialCare | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: _11/07/2022_

_____ (SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (10/22).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>11/07/2022<br><br>Sherri R. Carter, Executive Officer / Clerk of Court<br><br>By: _____ Deputy<br>G. Carini |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>22STCV35388 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ Maren  Nelson | 17 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 11/08/2022
   (Date)

LACIV 190 (Rev 6/18)
LASC Approved 05/06

Sherri R. Carter, Executive Officer / Clerk of Court

By G. Carini_____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com
     (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org
     (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                         FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the  complaint, and _____ for the cross-
   (INSERT DATE)                              (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢   _____
(ATTORNEY FOR PLAINTIFF)

➢   _____
(ATTORNEY FOR DEFENDANT)

➢   _____
(ATTORNEY FOR DEFENDANT)

➢   _____
(ATTORNEY FOR DEFENDANT)

➢   _____
(ATTORNEY FOR _____)

➢   _____
(ATTORNEY FOR _____)

➢   _____
(ATTORNEY FOR _____)

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.    Be filed within two (2) court days of receipt of the Request; and

      iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR PLAINTIFF)

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____)

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____)

Date: _____

➢ _____
_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____)

| Print | Save |   | Clear |

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1.  At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine.  Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2.  The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine.  In that meet and confer, the parties will determine:

    a.  Whether the parties can stipulate to any of the proposed motions.  If the parties so stipulate, they may file a stipulation and proposed order with the Court.

    b.  Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues.  For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference.  Each side's portion of the short joint statement of issues may not exceed three pages.  The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3.  All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

[ Print ]   [ Save ]                    [ Clear ]

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

|  |  |
|---|---|
| General Order Re<br>Use of Voluntary Efficient Litigation<br>Stipulations | ) ORDER PURSUANT TO CCP 1054(a),<br>) EXTENDING TIME TO RESPOND BY<br>) 30 DAYS WHEN PARTIES AGREE<br>) TO EARLY ORGANIZATIONAL<br>) MEETING STIPULATION<br>) |

Whereas the Los Angeles Superior Court and the Executive Committee of the

Litigation Section of the Los Angeles County Bar Association have cooperated in

drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los

Angeles County Bar Association Labor and Employment Law Section; the Consumer

Attorneys Association of Los Angeles; the Association of Southern California Defense

Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

Employment Lawyers Association all "endorse the goal of promoting efficiency in

litigation, and ask that counsel consider using these stipulations as a voluntary way to

promote communications and procedures among counsel and with the court to fairly

resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

11/14/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Mata _____ Deputy

COURTHOUSE ADDRESS:
Spring Street Courthouse
312 North Spring Street, Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
Laura Moore,

DEFENDANT/RESPONDENT:
MemorialCare Medical Group

## CERTIFICATE OF MAILING

CASE NUMBER:
22STCV35388

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order re: Complex Designation) of 11/14/2022, Initial Status Conference Order upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Stiner E. Christopher
Ahdoot & Wolfson, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 11/14/2022

By: M. Mata _____
Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 17

**22STCV35388**                                                November 14, 2022
**LAURA MOORE,  vs MEMORIALCARE MEDICAL GROUP**                  10:27 AM

Judge: Honorable Maren Nelson          CSR: None
Judicial Assistant: Maribel Mata       ERM: None
Courtroom Assistant: Cynthia Gomez     Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order re: Complex Designation

By this order, the Court determines this case to be Complex according to Rule 3.400 of the
California Rules of Court. The Clerk's Office has assigned this case to this department for all
purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one
thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex
fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent
or adverse party, not to exceed, for each separate case number, a total of eighteen thousand
dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties.
All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of
service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The
stay continues at least until the Initial Status Conference. Initial Status Conference is set for
02/01/2023 at 09:00 AM in this department. At least ten (10) days prior to the Initial Status
Conference, counsel for all parties must discuss the issues set forth in the Initial Status
Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response
Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the
Court and the parties manage this complex case by developing an orderly schedule for briefing,
discovery, and court hearings. The parties are informally encouraged to exchange documents and
information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice
of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of
Appearance shall not constitute a waiver of any substantive or procedural challenge to the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 17

**22STCV35388**                                                   November 14, 2022
**LAURA MOORE,  vs MEMORIALCARE MEDICAL GROUP**                    10:27 AM


Judge: Honorable Maren Nelson            CSR: None
Judicial Assistant: Maribel Mata         ERM: None
Courtroom Assistant: Cynthia Gomez       Deputy Sheriff: None

---

Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for "Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's First Amended General Order of May 3, 2019, particularly including the provisions therein requiring Bookmarking with links to primary documents and citations; that Order is available on the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every new case to use an approved third-party cloud service that provides an electronic message board. In order to facilitate communication with counsel prior to the Initial Status Conference, the parties must sign-up with the e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and parties to make audio or video appearances in Los Angeles County courtrooms. LACourtConnect technology provides a secure, safe and convenient way to attend hearings remotely. A key element of the Court's Access LACourt YOUR WAY program to provide services and access to justice, LACourtConnect is intended to enhance social distancing and change the traditional in-person courtroom appearance model. See https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS") portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1 is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Counsel are directed to access the following link for further information on procedures in the

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 17

**22STCV35388**                                                November 14, 2022
**LAURA MOORE,  vs MEMORIALCARE MEDICAL GROUP**                 10:27 AM

Judge: Honorable Maren Nelson            CSR: None
Judicial Assistant: Maribel Mata         ERM: None
Courtroom Assistant: Cynthia Gomez       Deputy Sheriff: None

Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Certificate of Mailing is attached.

**FILED**
Superior Court of California
County of Los Angeles

NOV 1 4 2022

Sherri R. Carter, Executive Officer/Clerk of Court
By_____ Deputy
MARBLE MYATT

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

LAURA MOORE

        Plaintiff,

    vs.

MEMORIAL CARE MEDICAL GROUP

        Defendant

Case No.:  22STCV35388

INITIAL STATUS CONFERENCE
ORDER (COMPLEX CLASS ACTIONS)

Dept. 17
Spring Street Courthouse
Hon. Maren E. Nelson

      This Initial Status Conference Order (Complex Class Actions) supplements a

Minute Order served concurrently herewith.  That Minute Order sets a date and time for

the Initial Status Conference and includes other provisions which not repeated in this

Order.  Counsel should review that Minute Order carefully to be fully informed of your

obligations and the processes used in the Los Angeles Superior Court Complex Courtrooms.

Pending further order, the following is ordered:

## I.    Initial Status Conference

Counsel for all parties shall appear for an Initial Status Conference ("ISC") per the Minute Order served concurrently herewith.

Counsel representing a party at the ISC or any other status conference should be fully familiar with the facts as then understood and be able to make binding agreements respecting case management.

Parties presently engaged in mediation or who have a secured a date with a mediator for mediation may stipulate to one continuance of the ISC, provided they also agree upon an e-service provider, as set forth in Item 8, below, and include the name of the provider and the date of the mediation in their Stipulation for Continuance.  It is expected that parties using this procedure will timely exchange such information as is necessary to have a productive mediation and that the mediation will go forward as scheduled.

At the ISC, the Court will discuss case management, set dates for motions, and invite the parties to propose procedures to enhance efficiency and avoid duplicative or unnecessary expenditures of time.

At least ten (10) days prior to the ISC, all counsel shall meet, preferably by use of telephone and/or video technology, to discuss case management.  Plaintiff's counsel shall take the lead in preparing a joint ISC Statement and ensuring that it is filed at least **five** **(5)** court days prior to the ISC.   To the extent the parties are unable to agree on a joint submission, each party may separately present a brief statement of its position.  If any party who has been served with this Order declines to participate, all other parties shall file an ISC statement.

The ISC Statement shall contain the following in the following order:

1. A succinct description of the facts of the case as then known. In wage and hour cases the nature of the employee's work, the employer's business, and the specific factual bases for claims under the Labor Code shall be provided. Citations to relevant statutes and pending appellate cases that may impact the case shall be provided.

2. A discussion of any issues of jurisdiction, venue, contractual arbitration/judicial reference that any party intends to raise and the meet and confer efforts to date on these issues.  Prior to the ISC any party seeking arbitration shall have provided a copy of the applicable agreement to arbitrate to the opposing party and a decision should have been made as to whether a motion to compel arbitration will be required.  Dates for any motions involving challenges to jurisdiction, venue, the pleadings, or referrals to arbitration will be set at the ISC.

3. Counsel should address issues such as an agreement to share the cost of class notice/opt out procedures, the adequacy of class representatives, and potential conflicts of interest among class representatives.

4. Whether the action incorrectly identifies the name of any party and whether any party intends to add parties or causes of action by way of amendment, cross-complaint, or the like.

5. The names, addresses, telephone, email, and facsimile numbers of all counsel and the parties they represent.

6. Any basis for the Court's recusal or disqualification.

7. A discussion of the identity of entities or persons other than those shown in the pleadings that may have a significant financial or other interest in the proceedings.

8. A joint recommendation for an e-service provider for inclusion in the Court's order for initiation of e-service.  The parties must employ an agreed e-service provider.  The parties shall identify the appointed e-service provider in the caption of each filing.

9. A brief description of any related cases pending in other courts or anticipated for future filing.

10. Whether there is insurance coverage for the dispute.

11. A plan to preserve evidence, to deploy a uniform system for identification of documents, and to protect confidentiality by, for example, executing a protective order.

12. A preliminary discovery plan, with dates, reflecting the parties' consideration of phased discovery, e.g., limiting initial discovery to a significant or dispositive issue as a predicate to an important early ruling or meaningful participation in an early mediation.   In class actions, the parties should address whether discovery should initially be limited to class certification issues.

13. Where appropriate, the parties should outline a process for managing discovery of electronically stored information (ESI) by, for example, scheduling a meeting among counsel and the parties' information technology consultants in order to address (1) the information management systems employed by the parties; (2) the location and custodian(s) of information likely to be subject to production (including the identification of network and email servers and hard drives maintained by target custodians); (3) the format in which electronically stored information will be produced; (4) the type of ESI that will be produced, i.e., data files, emails, etc.; and (5) appropriate search criteria for focused requests.

14. Any proposed mechanism for and the timing of mediation and/or mandatory settlement conferences to assist in resolution of the case.

15. Any issues regarding publicity which the Court should consider.

16. Recommended dates and times for trial, filing of motions for class certification, alternative dispute resolution, and deadlines (and proposed briefing schedules) for filing other anticipated motions.

17. A recommended date for the next Status Conference.

## III.   **Reminders And Other Information**

1. It is the joint responsibility of counsel to file a joint status conference statement for all status conferences scheduled after the ISC, which statement shall be filed five

(5) court days in advance of the status conference.

2. Counsel may secure dates for motions by calling the Courtroom Assistant. Counsel should have jointly discussed any likely contested motion with each other and the Court before it is filed so that, if possible, the matter may be resolved or narrowed by agreement or, if filed, an appropriate briefing schedule is set.

3. Unless otherwise ordered, counsel may appear remotely for all appearances. Please be in a quiet place and note that a party speaking may not hear simultaneous speech in the courtroom. Please speak slowly and pause frequently. Each counsel should advise the others at least 24 hours in advance as to whether an appearance will be remote or in person.

4. Any message on the message board for the Court should be joint and neutral in tone. Absent good cause shown no unilateral postings are appropriate.

5. In the ordinary course, discovery motions will not be heard without an Informal Discovery Conference (IDC) pursuant to Cal. Code of Civ. Pro. § 2016.080. Counsel may arrange for an IDC by jointly posting a request on the e-service provider's message board. If all counsel are not in agreement, counsel may request an IDC by filing LACIV094. Unilateral requests for IDC by message board are not appropriate.

6. Specific direction as to the matters to be provided to the Court for the IDC and the timing of same will be given at the time the IDC is arranged and may vary depending on the nature of the dispute. Unless otherwise ordered, IDC are held by LACourtConnect and off the record.

7. It is the responsibility of all counsel to notify the Court promptly of any related case and to secure a ruling thereon. See Cal. Rules of Court, Rule 3.300 et. seq. This responsibility is on-going.

8. Posting documents to the e-service provider does not constitute filing a document. See the Minute Order for further terms re efiling.

9. Counsel desiring a protective order should consult the model on the court's website and provide a redlined copy if deviations are made from same. See

"Helpful Guidance From the Complex Litigation Judges" on the Complex Litigation webpage link provided in the Minute Order.

10. Any future stay ordered by the Court for purposes of case management is not a stay under Code of Civil Procedure § 583.310 unless the Court so orders

11. The dismissal of a class action requires court approval. Cal. Rules of Court, Rule 3.770(a). Counsel must submit a declaration setting forth, among other things, the reasons why a party seeks a dismissal in a class action and any and all consideration given in exchange for the dismissal.

12. Settlement of claims filed under the Private Attorney General Act (PAGA) (whether or not filed as part of a class action) require notice to the Labor and Workforce Development Agency. Labor Code § 2699 (l)(2). A noticed hearing, with proof of service to LWDA and a proposed Order, is required to secure approval of the settlement of a PAGA claim. Settlements that include dismissal of a PAGA claim require that the Court be advised of the specific terms of any release of the PAGA claim and the consideration, if any, for same.

To obtain approval of a class action settlement, the parties should strictly adhere to the Guidelines for Motions for Preliminary and Final Approval posted on the court's website under Tools for Litigators. See the link to same in the Minute Order served concurrently herewith.

## IV.    **Notice of the ISC Order**

Plaintiff's counsel shall serve this Initial Status Conference Order on all defense counsel, or if counsel is not known, on each defendant and file a Proof of Service with the court within seven (7) days of the date of this Order. If the Complaint has not been served as of the date of this Order, plaintiff(s) must serve the Complaint, along with a copy of this Order, within five (5) days of the date of this Order.

Once served, each as yet non-appearing defendant shall file a Notice of Appearance (identifying counsel by name, firm name, address, email address, telephone number and fax number). The filing of a Notice of Appearance is without prejudice to

///

///

(a) any jurisdictional, substantive, or procedural challenge to the Complaint, (b) any affirmative defense, and (c) the filing of any cross-complaint in this action.

Date: 11/14/2022

Maren E. Nelson
Judge of the Superior Court

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| Tina Wolfson (SBN 174806) <br> AHDOOT & WOLFSON, PC <br> 2600 W Olive Avenue Suite 500 <br> Burbank, CA 91505 <br> *Telephone No:* 818-474-9111 <br><br> *Attorney For:* Plaintiff | |

*Ref. No. or File No.:*
MemorialCare FB Pixel Tracking

*Insert name of Court, and Judicial District and Branch Court:*
In The Superior Court of The State of California In And for The County of Los Angeles

*Plaintiff:* LAURA MOORE, on behalf of herself and all others similarly situated
*Defendant:* MEMORIALCARE MEDICAL GROUP d/b/a MEMORIALCARE,

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number: <br> 22STCV35388 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons, Class Action Complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location (Certificate of Grounds for Assignment to Courthouse Location); Notice of Case Assignment- Unlimited Civil Case; First Amended General Order; Minute Order; Initial Status Conference Order (Complex Class Actions); Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation; Voluntary Efficient Litigation Stipulations; Stipulation-Discovery Resolution; Stipulation-Early Organizational Meeting; Informal Discovery Conference; Stipulation And Order-Motions In Limine; Alternative Dispute Resolution (ADR) Information Package

3. *a.* *Party served:* MEMORIALCARE MEDICAL GROUP d/b/a MEMORIALCARE,
   *b.* *Person served:* Emailed

4. *Address where the party was served:* CovidLegal@Memorialcare.org

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Wed, Nov 30, 2022 (2) at *(time)*: 11:03 AM
   (1) [X] (business)
   (2) [ ] (home)
   (3) [ ] (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: MEMORIALCARE MEDICAL GROUP d/b/a MEMORIALCARE,
      under the following Code of Civil Procedure section:
      [ ] 416.10 (corporation)              [X] 415.95 (business organization, form unknown)
      [ ] 416.20 (defunct corporation)      [ ] 416.60 (minor)
      [ ] 416.30 (joint stock company/association)  [ ] 416.70 (ward or conservatee)
      [ ] 416.40 (association or partnership)  [ ] 416.90 (authorized person)
      [ ] 416.50 (public entity)            [ ] 415.46 (occupant)
      [ ] other:



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE SUMMONS**

*8022115*
*(5161444)*
Page 1 of 2

| Attorney or Party without Attorney:<br>Tina Wolfson (SBN 174806)<br>AHDOOT & WOLFSON, PC<br>2600 W Olive Avenue Suite 500<br>Burbank, CA 91505<br>  Telephone No:  818-474-9111<br><br>  Attorney For:   Plaintiff | For Court Use Only |
|---|---|
| | Ref. No. or File No.:<br>MemorialCare FB Pixel Tracking |

| Insert name of Court, and Judicial District and Branch Court:<br>In The Superior Court of The State of California in And for The County of Los Angeles |
|---|
| Plaintiff:  LAURA MOORE, on behalf of herself and all others similarly situated<br>Defendant:  MEMORIALCARE MEDICAL GROUP d/b/a MEMORIALCARE, |

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>22STCV35388 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.  **Person who served papers**
   a.  Name:          Daniel Rodriguez
   b.  Address:       **FIRST LEGAL**
                    1517 W. Beverly Blvd.
                    LOS ANGELES, CA 90026
   c.  Telephone number:   (213) 250-1111
   d.  **The fee** for service was:  $41.75
   e.  I am:
      (1)  [ X ]  not a registered California process server.
      (2)  [   ]  exempt from registration under Business and Professions Code section 22350(b).
      (3)  [   ]  a registered California process server:
          (i)  [   ] owner  [   ] employee  [   ] independent contractor
          (ii)  Registration No:
          (iii)  County:

8.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| 11/30/2022 | |
|---|---|
| *(Date)* | *Daniel Rodriguez* |



Electronically FILED by Superior Court of California, County of Los Angeles on 12/12/2022 12:12 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Arellanes,Deputy Clerk
Case 2:22-cv-09468-Document 1-1 Filed 12/30/22 Page 67 of 102 Page ID #:81
22STCV35388

**SUM-100**

# AMENDED SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Memorial Health Services d/b/a MemorialCare

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Laura Moore, on behalf of herself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):*
22STCV35388

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tina Wolfson (SBN 174806), AHDOOT & WOLFSON, PC, 2600 W. Olive Avenue, Suite 500, Burbank, CA 91505; Tel: (310) 474-9111

DATE:
*(Fecha)* 12/12/2022
Clerk, by Sherri R. Carter Executive Officer / Clerk of Court, Deputy
*(Secretario)* M. Arellanes *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

1 Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
2 Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
3 Christopher E. Stiner (SBN 276033)
cstiner@ahdootwolfson.com
4 **AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
5 Burbank, CA 91505
Telephone: (310) 474-9111
6 Facsimile:  (310) 474-4521

7
Gary M. Klinger (*pro hac vice* to be filed)
8 gklinger@milberg.com
**MILBERG COLEMAN BRYSON**
9 **PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
10 Chicago, IL 60606
Telephone: (847) 208-4585
11

12 *Attorneys for Plaintiff and the Putative Class*

13 [Additional counsel appear on signature page]

14

15 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16 **IN AND FOR THE COUNTY OF LOS ANGELES**

17

| | |
|---|---|
| LAURA MOORE, on behalf of herself and all others similarly situated, | Case No.: 22STCV35388 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| MEMORIAL HEALTH SERVICES d/b/a/ MEMORIALCARE, | JURY TRIAL DEMANDED |
| Defendant. | Judge:  Hon. Maren Nelson Dept.:  17 |

FILED
Superior Court of California
County of Los Angeles

12/12/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Arellanes _____ Deputy

Plaintiff Laura Moore ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class Members"), by and through her attorneys, makes the following allegations based on knowledge as to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to all other matters.

## NATURE OF THE ACTION

1.      This is a data privacy class action lawsuit brought on behalf of all California residents who have accessed www.memorialcare.org, a website Defendant owns and operates, and who had their personally identifiable information and/or protected health information improperly disclosed to Facebook as a result of using Defendant's website.

2.      Defendant aids employs, agrees, and conspires with Facebook to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.

3.      Plaintiffs and Class Members used www.memorialcare.org to search and locate physicians, schedule medical appointments, and find treatment options. Defendant also encouraged its patients to use additional web features—such as the general search bar and chat feature—to enter search queries and ask specific questions regarding their medical conditions and healthcare options.

4.      Unbeknownst to Plaintiff and Class Members, and pursuant to the systematic process described herein, patients' private and protected communications with www.memorialcare.org were automatically transmitted and communicated to Facebook, alongside other information—including but not limited to individual patients' IP addresses, physical locations, and unique and persistent Facebook ID—as a result of Defendant's decision to install and use tracking pixels on its website.

5.      As a result of Defendant's unauthorized transmission of its patients' identities and online activity, including information and search results related to their private medical treatment, to a third party, Plaintiff brings this action for legal and equitable remedies resulting from the violations of the California Invasion of Privacy Act, the California Confidentiality of Medical Information Act, and for the Invasion of Privacy Under California's Constitution.

**JURISDICTION AND VENUE**

6.     The Court has personal jurisdiction over Defendant because Defendant resides in and does business in the State of California.

7.     This is a class action brought pursuant to Code of Civil Procedure section 382, and this Court has jurisdiction over the Plaintiff's claims because the amount in controversy exceeds this Court's jurisdictional minimum.

8.     Federal jurisdiction under the Class Action Fairness Action, 28 U.S.C. §1332(d), is lacking because the proposed class of plaintiffs is limited to citizens of the state of California.

9.     Venue is proper under Code of Civil Procedure sections 395(a) and 395.5 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this county.

**THE PARTIES**

10.     Memorial Health Services d/b/a MemorialCare ("MemorialCare" or "Defendant") is registered as a nonprofit entity with its principal place of business in California. Defendant employs approximately 11,000 individuals, with over 3,000 medical staff physicians, and, as of June 30, 2021, had an annual revenue of approximately $732,000,000. As the owner and operator of MemorialCare Long Beach Medical Center among other medical centers and operations, Defendant offers a full range of medical services, including primary and outpatient care, and treats thousands of patients each year.

11.     Plaintiff Laura Moore is an adult citizen of the state of California and is domiciled in Long Beach, California. On numerous occasions from 2016 to 2021, Plaintiff Moore accessed www.memorialcare.org on her phone and desktop and used the website to look for health care providers. Plaintiff Moore has used and continues to use the same devices to maintain and access an active Facebook account throughout the relevant period in this case. Pursuant to the systematic process described herein, MemorialCare assisted Facebook with intercepting Plaintiff Moore's communications, including those that contained personally identifiable information, protected health information, and related confidential information. MemorialCare assisted these interceptions without Plaintiff Moore's knowledge, consent, or express written authorization. By failing to receive the

- 2 -

requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiff Moore's personally identifiable information and protected health information.

## FACTUAL ALLEGATIONS

**A.     Background of the California Information Privacy Act ("CIPA")**

12.     The CIPA, Cal. Penal Code §§ 630, *et seq*., prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

13.      To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

- Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system; or

- Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state; or

- Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or

- Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

14.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc*., No. 15-cv-4062-LHK, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., No. 06-cv-5289-WHA, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

- 3 -

15.     Under California Penal Code section 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.     Background of the California Confidentiality of Medical Information Act ("CMIA")**

16.     Pursuant to the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*, "A provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal. Civ. Code § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c) Is signed and dated . . .

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, MemorialCare could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3), 56.10(b)(6).

- 4 -

Cal. Civ. Code § 56.11.

17.     Moreover, a health care provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as implementing a system that records and discloses online patients' personally identifiable information and protected health information. Cal. Civ. Code § 56.36(c).[2] Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages. Cal. Civ. Code § 56.36(b).

18.     "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual damages, if any, sustained by the patient." *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551, (2014) (quoting Cal. Civ. Code § 56.36(b)).

**C.     MemorialCare's Website**

19.     MemorialCare is the largest health system headquartered in Orange County, California. MemorialCare's network includes several hospitals (Orange Coast Medical Center, Saddleback Medical Center, Long Beach Medical Center and Miller Children's & Women's Hospital Long Beach), MemorialCare Medical Group and Greater Newport Physicians, MemorialCare Research, MemorialCare Select Health Plan, and numerous outpatient ambulatory surgery, and specialty care centers.

20.     MemorialCare Long Beach Medical Center, for example, is a 435-bed regional medical center that offers a full range of medical services, including primary and outpatient care. MemorialCare

---

[2] "Every provider of health care . . . who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care . . . who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." Cal. Civ. Code § 56.101(a).

Long Beach Medical Center's services, include, but are not limited to: blood donation, breast care, cancer care, diabetes care, digestive care, emergency care, gynecological care, heart and vascular care, hospice services, imaging and radiology, joint replacement, laboratory services, lung and respiratory care, mental health, nursing services, orthopedic care, palliative care, physical therapy and rehabilitation services. Defendant's coverage area includes 23 zip codes, representing 12 cities and communities, and it provides medical services to 1,059,713 people each year, based on Defendant's own estimates as of 2021.

21.    Defendant's website, www.memorialcare.org, is accessible on mobile devices and desktop computers. MemorialCare also allows users to interact with its health system via several mobile applications available for download on Android and iPhone devices.

**D.    Facebook's Platform and its Business Tools**

22.    Facebook describes itself as a "real identity platform,"[3] meaning users are allowed only one account and must share "the name they go by in everyday life."[4] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[5]

23.    In 2021, Facebook generated $117 billion in revenue.[6] Roughly 97% of that came from selling advertising space.[7]

---

[3] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021), https://www.wsj.com/articles/how-many-users-does-facebook-have-the-company-struggles-to-figure-it-out-11634846701.

[4] *Facebook Community Standards: Account Integrity and Authentic Identity*, FACEBOOK, https://transparency.fb.com/policies/community-standards/account-integrity-and-authentic-identity/ (last visited Nov. 7, 2022).

[5] *Sign Up*, FACEBOOK, https://www.facebook.com/ (last visited Nov. 7, 2022).

[6] *Meta Reports Fourth Quarter and Full Year 2021 Results*, FACEBOOK (Feb. 2, 2022), https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx.

[7] *Id.*

24.     Facebook sells advertising space by highlighting its ability to target users.[8] Facebook can target users so effectively because it surveils user activity both on and off its site.[9] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[10] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[11]

25.     Advertisers can also build "Custom Audiences."[12] Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[13] With Custom Audiences, advertisers can target existing customers directly, and they can also build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[14] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools."[15]

---

[8] *Why Advertise on Facebook, Instagram or other Meta technologies*, FACEBOOK, https://www.facebook.com/business/help/205029060038706 (last visited Nov. 7, 2022).

[9] *About Meta Pixel*, FACEBOOK, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Nov. 7, 2022).

[10] *Ad Targeting: Help your ads vind the people who will love your business*, FACEBOOK, https://www.facebook.com/business/ads/ad-targeting (last visited Nov. 7, 2022).

[11] *Core Audiences*, FACEBOOK, https://www.facebook.com/business/news/Core-Audiences (last visited Nov. 7, 2022).

[12] *About Custom Audiences*, FACEBOOK, https://www.facebook.com/business/help/744354708981227?id=2469097953376494 (last visited Nov. 7, 2022).

[13] *Ad Targeting: Help your ads vind the people who will love your business*, FACEBOOK, https://www.facebook.com/business/ads/ad-targeting (last visited Nov. 7, 2022).

[14] *About Lookalike Audiences*, FACEBOOK, https://www.facebook.com/business/help/164749007013531?id=401668390442328 (last visited Nov. 7, 2022).

[15] *Create a customer list Custom Audience*, FACEBOOK, https://www.facebook.com/business/help/1704

(footnote continued)

26.     As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Meta, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[16] Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

27.     The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[17] Facebook's Business Tools can also track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[18] Advertisers can even create their own tracking parameters by building a "custom event."[19]

28.     One such Business Tool is the Facebook Tracking Pixel. Facebook offers this piece of code to advertisers, like MemorialCare, to integrate into their website. As the name implies, the Facebook Pixel "tracks the people and type of actions they take."[20]  When a user accesses a website

---

[16] *The Meta Business Tools*, FACEBOOK, https://www.facebook.com/help/331509497253087 (last visited Nov. 7, 2022).

[17] *See Meta Pixel: Advanced:* FACEBOOK, https://developers.facebook.com/docs/facebook-pixel/advanced/ (last visited Nov. 7, 2022); *see also Best practices for Meta Pixel setup*, FACEBOOK, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited Nov. 7, 2022); *App Events API*, FACEBOOK, https://developers.facebook.com/docs/marketing-api/app-event-api/ (last visited Nov. 7, 2022).

[18] *Specifications for Meta Pixel standard events*, FACEBOOK, https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (Nov. 7, 2022).

[19] *About standard and custom website events*, FACEBOOK, https://www.facebook.com/business/help/964258670337005?id=1205376682832142 (Nov. 7, 2022); *App Events API*, FACEBOOK, https://developers.facebook.com/docs/marketing-api/app-event-api/ (Nov. 7, 2022).

[20] *Retargeting*, FACEBOOK, https://www.facebook.com/business/goals/retargeting (last visited Nov. 7, 2022).

56843145568?id=2469097953376494 (last visited Nov. 7, 2022); *Create a Website Custom Audience*, FACEBOOK, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited Nov. 7, 2022).

that has installed the Facebook Pixel into its code, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's websites—Defendant's own code, and Facebook's embedded code.

29.     An example illustrates the point. When an individual navigates to www.memorialcare.org and clicks on a particular physician's profile—or any other webpage installed with Facebook Pixel—the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Facebook Pixel, via cookies and embedded code, silently instructs the user's browser to duplicate and transmit the user's communications with www.memorialcare.org, sending the corresponding data to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity.

30.     After collecting and intercepting this information, Facebook processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences.

**E.     How MemorialCare Discloses Class Members Protected Health Information and Assists with Intercepting Communications**

31.     Through the Facebook Pixel, Defendant shares its patients' identities and online activity, including information and search results related to their private medical treatment.

32.     For example, when a patient visits www.memorialcare.org to search for a doctor, they may select the "Find a Provider" button, which takes them to the "Find a Provider" page.

1
2
3
4
5
6
7
8
9
10
11



**Figure 1.** Image of www.memorialcare.org's landing page.

12
13
14
15
16
17
18
19
20
21
22
23



**Figure 2.** Defendant directs patients to its "Find a Provider" webpage.

24
25
26        33.     If a patients selects filters or enters keywords into the search bar on the "Find a Provider"
27 webpage, the filters and search terms are transmitted via the Facebook Pixel. Similarly, if a patient uses
28 the websites' general search bar or chat, the terms and phrases the patient types are transmitted to

- 10 -

FIRST AMENDED CLASS ACTION COMPLAINT

Facebook, even if they contain a patient's treatment, procedures, medical conditions, and related queries.



*Figure 3* [21]

---

[21] On information and belief, the text users type into the search bar is transmitted and included in the web address and URL that corresponds with the search results. https://www.memorialcare.org/search?query=ovarian+cancer (last accessed Nov. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

34.      The "Find a Provider" page also allows patients to narrow search results based on distance from a particular location, "Hospital," "Medical Group," and the provider's "Specialty." Patients can also narrow their search results based on the provider's gender and spoken languages.



*Figures 4 & 5*

35.      After taking any of these actions on the Find a Provider page, patients are subsequently directed to the "Provider Search Results" page, and their selections or search parameters are automatically transmitted.

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 6*. Defendant's "Find a Provider" webpage identifies doctors that fit the patient's search criteria.

36.      Once a patient chooses a doctor, all of the information that patient has submitted is automatically sent directly to Facebook. On information and belief, the information transmitted to Facebook includes: (1) the patient's unique and persistent Facebook ID (c_user ID), (2) the fact that the patient clicked on a specific provider's profile page (Dr. Allison Diamant in the example below), (3) the patient's search parameters (demonstrating they specifically searched for a female doctor, specialized in Internal Medicine, who is also recognized as an "LGBTQ Champion,"), and (4) the patient's location filter (demonstrating the patient sought a provider located in Santa Monica).

FIRST AMENDED CLASS ACTION COMPLAINT

+ https://www.facebook.com/tr/?id=2228363922712190&ev=Microdata&dl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2FAllison-diamant&rl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2Fsearch%3Ff%255B0%255D%3Dbook-online%253A1%26f%255B1%255D%3Dgender%253Afemale%26f%255B2%255D%3Dlgbtq-champion%253A1%26f%255B3%255D%3Dspecialty%253A48291%26s%3Dsanta%2520monica&if=false&ts=1642513633375&cd[DataLayer]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22Allison%20L.%20Diamant%2C%20MD%2C%20MSHS%20%7C%20Internal%20Medicine%20-%20Santa%20Monica%2C%20CA%22%7D&cd[OpenGraph]=%7B%7D&cd[Schema.org]=%5B%5D&cd[JSON-LD]=%5B%5D&sw=1536&sh=864&v=2.9.48&r=stable&ec=1&o=30&fbp=fb.1.1642500078069.1683984616it=1642513631801&coo=false&dpo=LDU&dpoco=0&dpost=0&es=automatic&tm=3&exp=p1&rqm=GET

HEADERS
+ accept:              image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:     gzip, deflate, br
+ accept-language:     en-US,en;q=0.9
+ connection:          keep-alive
+ cookie:              sb=pI_mYbDjWuo9xLOujLYAqmgj; datr=pY_mYUQlzBjV0goTvf8Fc5kk; dpr=1.25;
                       c_user=1000X█████████; xs=31%3Aixsejnh2uCR64w%3A2%3A1642500031%3A-1%3A-1;
                       fr=0lFW0ez5zBqyosnvK.AWUQOz3O06Xiyeb4ABdDft7tfpw.Bh5o-k.XV.AAA.0.0.Bh5o-
                       _.AWWrZTrctzQ; spin=r.1004946732_b.trunk_t.1642500037_s.1_v.2_
+ host:                www.facebook.com
+ referer:             https://www.uclahealth.org/

*Figure 7* [22]

37.     Defendant's website also includes a feature that allows patients to book appointments through a particular doctor's profile page. If a patient clicks on the "Schedule an Appointment" button, this action is communicated and shared with Facebook. Facebook classifies this event as a "SubscribedButtonClick," which indicates that the patient clicked the specific button (in order to book the appointment). Similarly, each doctor's profile page includes a direct link that allows patient to call the doctor's office, and, upon clicking the telephone number button, the patient's click is shared with Facebook.

---

[22] The screenshot above serves as example and demonstrates the types of data transmitted during an HTTP single communication session. This information is automatically sent from the patient's device to Facebook, and it reveals the patients FID (c_user field) along with each search filter the patient selected.

FIRST AMENDED CLASS ACTION COMPLAINT

38.     MemorialCare's website allows online patients to request an appointment with a doctor they have not been to before by completing an online form and selecting the "Make an Appointment" button. Upon doing this, Defendant shares the patient's selection immediately with Facebook.

*Figure 8* [23]



38.     MemorialCare's website allows online patients to request an appointment with a doctor they have not been to before by completing an online form and selecting the "Make an Appointment" button. Upon doing this, Defendant shares the patient's selection immediately with Facebook.

```
+ https://www.facebook.com/tr/?id=222836392271290&ev=SubscribedButtonClick&dl=https%3A%2F%2Fww
w.uclahealth.org%2Fproviders%2Fallison-diamant&rl=https%3A%2F%2Fwww.uclahealth.org%2Fproviders%2
Fsearch%3Ff%255B0%255D%3Dbook-online%253A1%26f%255B1%255D%3Dgender%253Afemale%26f%255B2%255D%3Dl
gbtq-champion%253A1%26f%255B3%255D%3DSpecialty%253A48291%26s%3Dsanta%2520monica&if=false&ts=1642
515885628&cd[buttonFeatures]=%7B%22classList%22%3A%22button%20button--primary-alt%20button--smal
l%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%2
2%3A%22Book%20an%20Appointment%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22button%22%2C%22na
me%22%3A%22%22%2C%22value%22%3A%22%22%7D&cd[buttonText]=Book%20an%20Appointment&cd[formFeatures]
=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Allison%20L.%20Diamant%2C%20MD%2C%20MSHS%20%7C%20In
ternal%20Medicine%20-%20Santa%20Monica%2C%20CA%22%7D&cd[parameters]=%5B%5D&sw=1920&sh=1080&v=2.
9.48&r=stable&ec=2&o=30&fbp=fb.1.1642500078069.1683984616it=1642513631801&coo=false&dpo=LDU&dpoc
o=0&dpost=0&es=automatic&tm=3&exp=p1&rqm=GET

HEADERS
+ accept:            image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:   gzip, deflate, br
+ accept-language:   en-US,en;q=0.9
+ connection:        keep-alive
+ cookie:            sb=pI_mYbDjWuo9xLOujLYAqmgj; datr=pY_mYUQlzBjV0goTvf8Fc5kk; dpr=1.25;
                     c_user=10007██████████; xs=31%3AixsejnhZuCR64w%3A2%3A1642500031%3A-1%3A-
                     1; fr=0lFW0ez5zBqyosnvK.AWUQOz3O06Xiyeb4ABdDft7tfpw.Bh5o-
                     k.XV.AAA.0.0.Bh5o-_.AWWrZTrctzQ;
                     spin=r.1004946732_b.trunk_t.1642500037_s.1_v.2_
+ host:              www.facebook.com
+ referer:           https://www.uclahealth.org/
```

---

[23] The screenshot above serves as example and demonstrates the types of data transmitted during an HTTP single communication session. This information is automatically sent from the patient's device to Facebook, and it reveals the patients FID (c_user field) along with information indicating that the user booked an appointment with a particular physician.

FIRST AMENDED CLASS ACTION COMPLAINT

**Figure 9**



**Figure 10** [24]

---

[24] Figures 9 and 10 are not specific to Defendant's web page or to Plaintiff's search queries but nonetheless demonstrate ***how*** and ***what*** is communicated via the Facebook Pixel. Importantly, this (footnote continued)

39.     Each time Defendant sends this activity data, it also discloses a patient's personally identifiable information.

40.     A user who accesses Defendant's website while logged into Facebook will transmit the c_user cookie to Facebook, which contains that user's unencrypted Facebook ID. When accessing memorialcare.org, for example, Facebook receives even cookies, six of which are visible here:

| | | |
|---|---|---|
| presence | C%7B... | .facebook.com |
| xs | 3%3Ar... | .facebook.com |
| c_user | 10003... | .facebook.com |
| fr | 00ZpYJ... | .facebook.com |
| datr | MalzYj... | .facebook.com |
| sb | qqAzY... | .facebook.com |

**Figure 11**

41.     When a visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies.[25]

| | | |
|---|---|---|
| fr | 00Zp... | .facebook.com |
| wd | 1156... | .facebook.com |
| sb | qqAz... | .facebook.com |
| datr | Malz... | .facebook.com |

**Figure 12**

42.     The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[26] Facebook, at a minimum, uses the fr cookie to identify users.[27] At each stage, Defendant also utilizes

---

occurred without Plaintiff's knowledge or consent because patients' communications with www.memorialcare.org are simultaneously duplicated and transmitted to Facebook, alongside their unique Facebook ID (c_user ID), during a single HTTP communication session.

[25] Not pictured here and in the preceding image is the _fbp cookie, which is transmitted as a first-party cookie.

[26] *Facebook Ireland Ltd: Report of Re-Audit*, DATA PROTECTION COMMISSIONER (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.

[27] *Cookies Policy*, FACEBOOK, https://www.facebook.com/policy/cookies/ (last visited Nov. 7, 2022).

- 17 -

the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a user.[28]

43.     The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook or is otherwise used to visit the same website.[29] If that happens, the time resets, and another 90 days begins to accrue.[30]

44.     The Facebook Tracking Pixel uses both first and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., www.memorialcare.org.[31] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"— i.e., Facebook.[32] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

45.     Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles, and, as shown in the above figures, Defendant sends these identifiers alongside the event data.

46.     Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to disclose her personally identifiable information and protected health information and assist with intercepting her communications. Plaintiff was never provided with any written notice that Defendant discloses its website users' protected health information, nor was she provided any means of opting out of such disclosures. Defendant nonetheless knowingly disclosed Plaintiff's protected health information to Facebook.

---

[28] *Id*.

[29] *Id.*

[30] Confirmable through developer tools.

[31] *First-party cookie*, PC MAG, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited Nov. 7, 2022). This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[32] *Id.*  This is also confirmable by tracking network activity.

47.     By law, Plaintiff is entitled to privacy in her protected health information and confidential communications. MemorialCare deprived Plaintiff of her privacy rights when it: (1) implemented a system that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications, personally identifiable information, and protected health information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party eavesdropper; and (3) undertook this pattern of conduct without notifying Plaintiff and without obtaining her express written consent. Plaintiff did not discover until October of 2022 that Defendant disclosed her personally identifiable information and protected health information to Facebook and assisted Facebook with intercepting her communications.

## CLASS ACTION ALLEGATIONS

48.     **Class Definition:** Pursuant to section 382 of the Code of Civil Procedure, Plaintiff brings this action on behalf of herself and other similarly situated individuals (the "Class"), defined as California citizens who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook through the use of the Facebook Pixel tracking tool as a result of or in connection with using www.memorialcare.org. Plaintiff reserves the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

49.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

50.     Excluded from the Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer or director of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

51.     **Numerosity/Ascertainability**. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in

the Class. The identity of such membership is readily ascertainable from MemorialCare's records and non-party Facebook's records.

52.     **Typicality**. Plaintiff's claims are typical of the claims of the Class because Plaintiff used www.memorialcare.org and had her personally identifiable information and protected health information disclosed to Facebook without her express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class members.

53.     **Adequacy**. Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class members. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

54.     **Common Questions of Law and Fact Predominate/Well Defined Community of Interest**. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

(a)     Whether Defendant intentionally tapped the lines of internet communication between patients and their medical providers;

(b)     Whether Defendant's website surreptitiously records personally identifiable information, protected health information, and related communications and subsequently, or simultaneously, discloses that information to Facebook;

(c)     Whether Facebook is a third-party eavesdropper;

(d)     Whether Defendant's disclosures of personally identifiable information, protected health information, and related communications constitute an affirmative act of communication;

(e)     Whether Defendant's conduct, which allowed Facebook—an unauthorized person—to view Plaintiff's and Class members' personally identifiable information and protected health information, resulted in a breach of confidentiality;

(f)     Whether Defendant violated Plaintiff's and Class members' privacy rights by using Facebook's tracking pixel to record and communicate online patients' FIDs alongside their confidential medical communications;

(g)     Whether Plaintiff and Class members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

(h)     Whether Defendant's actions violate Plaintiff's and Class members' privacy rights as provided by the California Constitution;

55.     **Superiority**. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

### CLAIMS FOR RELIEF

### COUNT I
**Violations of the California Invasion of Privacy Act,**
**Cal. Penal Code § 631**

56.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and bring this Count individually and on behalf of the members of the Class.

57.     The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose.

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of

- 21 -

FIRST AMENDED CLASS ACTION COMPLAINT

eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

58.     California penal Code section 631(a) provides, in pertinent part:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or *who aids, agrees with, employs, or conspires* with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

Cal. Penal Code § 631(a) (emphasis added).

59.     A defendant must show it had the consent of *all* parties to a communication.

60.     At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's and Class Members' internet communications while accessing www.memorialcare.org. They intercepted these communications without authorization and consent from Plaintiff and Class Members.

61.     Defendant, when aiding and assisting Facebook's eavesdropping, intended to help Facebook learn some meaning of the content in the URLs and the content the visitor requested.

62.     The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the Facebook Tracking Pixel falls under the broad catch-all category of "any other manner":

a.     The computer codes and programs Facebook used to track Plaintiff's and the Class Members' communications while they were navigating memorialcare.org;

b.     The Plaintiff's and Class Member's browsers;

c.     The Plaintiff's and Class Members' computing and mobile devices;

d.     Facebook's web and ad servers;

- 22 -

e.   The web and ad-servers from which Facebook tracked and intercepted the Plaintiff's and Class Members' communications while they were using a web browser to access or navigate the memorialcare.org;

f.   The computer codes and programs used by Facebook to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using a browser to visit Defendant's website; and

g.   The plan Facebook carried out to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit Defendant's website.

63.   Defendant failed to disclose that it is used Facebook Pixel specifically to track and automatically transmit its patients' private and confidential communications to a third party, i.e., Facebook. Moreover, the Patient Privacy Notice states that sharing information about patients for marketing or sale of health information requires patients' authorization (as it does for every disclosure of health information not provided for under the Privacy Policy).

64.   The patient communication information that Defendant transmitted using Facebook Pixel, such as doctor appointment booking information, constitutes protected health information.

65.   As demonstrated hereinabove, Defendant violated CIPA by aiding and permitting third parties to receive its patients' online communications through its website without their consent.

66.   By disclosing Plaintiff's and the Class's Private Health Information, Defendant violated Plaintiff's and Class Members' statutorily protected right to privacy.

67.   As a result of the above violations, Defendant is liable to the Plaintiff and other Class Members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Pursuant to CIPA Section 637.2, any person who has been injured by a violation of CIPA may recover $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options). Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiffs has suffered, or be threatened with, actual damages."

68.     Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

## COUNT II
### Violations Of the California Confidentiality of Medical Information Act
### Cal. Civ. Code § 56.10

69.     Under the California Confidentiality of Medical Information Act ("CMIA") section 56.10, providers of health care are prohibited from disclosing medical information relating to their patients, without a patient's authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual . . . ." Cal. Civ. Code § 56.05.

70.     Plaintiff and Class Members are patients, and, as a health care provider, Defendant has an ongoing obligation to comply with the CMIA's requirements.

71.     As set forth hereinabove, Facebook ID is an identifier sufficient to allow identification of an individual. Along with patients' Facebook ID, MemorialCare discloses to Facebook several pieces of information regarding its patients' use of its website, which includes, but is not limited to: patient medical conditions, medical concerns, treatment patients are seeking, doctor appointments, medical specialty of the doctor(s) searched for by patients, and patient information regarding COVID-19.

72.     This patient information is derived from a provider of health care regarding patients' medical treatment and physical condition. Accordingly, it constitutes medical information pursuant to the CMIA.

73.     As demonstrated hereinabove, MemorialCare failed to obtain its patients' authorization for the disclosure of medical information and failed to disclose in its Privacy Policy and Privacy Practices that it shares protected health information for marketing purposes.

74.     Pursuant to CMIA section 56.11, a valid authorization for disclosure of medical information must be (1) "clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization" (2) signed

- 24 -

and dated by the patient or his representative (3) state the name and function of the third party that receives the information (4) state a specific date after which the authorization expires. Accordingly, the information set forth in MemorialCare's Privacy Policy, Patient Privacy Notice, and Terms of Use do not qualify as a valid authorization.

75.     Based on the above, MemorialCare violated the CMIA by disclosing its patients' medical information with Facebook along with the patients' Facebook ID.

76.     Under the CMIA, a patient may recover compensatory damages, punitive damages not to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any violating disclosure of medical information. Alternatively, a patient may recover nominal damages of $1,000 for any negligent release of medical information.

## COUNT III
### Invasion of Privacy Under California's Constitution

77.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the members of the proposed Class.

78.     Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

79.     At all relevant times, by using Facebook's tracking pixel to record and communicate patients' FIDs alongside their confidential medical communications, MemorialCare intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

80.     Plaintiff and Class Members had a reasonable expectation that their communications, identity, health information, and other data would remain confidential and that MemorialCare would not install wiretaps on www.memorialcare.org.

81.     Plaintiff and Class Members did not authorize MemorialCare to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

82.     This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

83.     Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## RELIEF REQUESTED

84.     Plaintiff, on behalf of herself and the proposed Class, respectfully requests that the Court grant the following relief:

(a)     Certification of this action as a class action and appointment of Plaintiff and Plaintiff's counsel to represent the Class;

(b)     A declaratory judgment that Defendant violated the California Invasion of Privacy Act, Cal. Penal Code § 631(a);

(c)     A declaratory judgment that Defendant violated the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*;

(d)     A declaratory judgment that Defendant violated Plaintiff's and Class Members' privacy rights as provided at common law and pursuant to the California Constitution;

(e)     An order enjoining Defendant from engaging in the unlawful practices and illegal acts described herein;

(f)     For actual or statutory damages;

(g)     For punitive damages, as warranted, in an amount to be determined at trial;

(h)     For prejudgment interest on all amounts awarded;

(i)     For injunctive relief as pleaded or as the Court may deem proper;

(j)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to California Code of Civil Procedure section 1021.5 and/or other applicable law; and

(k)     Such other and further relief as the Court may deem appropriate.

1

## DEMAND FOR JURY TRIAL

2      85.  Plaintiff, on behalf of herself and the proposed Class, demand a trial by jury for all of

3   the claims asserted in this Complaint so triable.

4

Dated: December 12, 2022

5                                                    Tina Wolfson (SBN 174806)
                                                     twolfson@ahdootwolfson.com
6                                                    Robert Ahdoot (SBN 172098)
                                                     rahdoot@ahdootwolfson.com
7                                                    Christopher E. Stiner (SBN 276033)
                                                     cstiner@ahdootwolfson.com
8                                                    **AHDOOT & WOLFSON, PC**
9                                                    2600 W. Olive Avenue, Suite 500
                                                     Burbank, CA 91505
10                                                   Telephone: (310) 474-9111
                                                     Facsimile:  (310) 474-4521
11

12                                                   Andrew W. Ferich*
                                                     aferich@ahdootwolfson.com
13                                                   **AHDOOT & WOLFSON, PC**
                                                     201 King of Prussia Road, Suite 650
14                                                   Radnor, PA 19087
                                                     Telephone: (310) 474-9111
15                                                   Facsimile:  (310) 474-4521

16                                                   Gary M. Klinger*
                                                     gklinger@milberg.com
17                                                   **MILBERG COLEMAN BRYSON**
18                                                   **PHILLIPS GROSSMAN, PLLC**
                                                     227 W. Monroe Street, Suite 2100
19                                                   Chicago, IL 60606
                                                     Telephone: (847) 208-4585
20

21                                                   Nick Suciu III*
                                                     nsuciu@milberg.com
22                                                   **MILBERG COLEMAN BRYSON**
                                                     **PHILLIPS GROSSMAN, PLLC**
23                                                   6905 Telegraph Rd., Suite 115
                                                     Bloomfield Hills, MI 48301
24                                                   Telephone: (313) 303-3482
                                                     Facsimile:  (865) 522-0049
25

26                                                   *Pro hac vice* application forthcoming

27                                                   *Attorneys for Plaintiff and the Putative Class*

28

- 27 -

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 3 2019

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )   FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
)
_____ )

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

   a) Trial Court Records

      Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

   b) Represented Litigants

      Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

   c) Public Notice

      The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

   i)   Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii)  Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv)  Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v)   Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i)    Depositions;

   ii)    Declarations;

   iii)    Exhibits (including exhibits to declarations);

   iv)    Transcripts (including excerpts within transcripts);

   v)    Points and Authorities;

   vi)    Citations; and

   vii)    Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

   i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

   ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day <u>before</u> the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i) Any printed document required pursuant to a Standing or General Order;

   ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv) Demurrers;

   v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi) Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1   11) SIGNATURES ON ELECTRONIC FILING

2       For purposes of this General Order, all electronic filings must be in compliance with California

3       Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4       Division of the Los Angeles County Superior Court.

5

6           This First Amended General Order supersedes any previous order related to electronic filing,

7       and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8       Supervising Judge and/or Presiding Judge.

9

10      DATED:  May 3, 2019                    

11                                                              KEVIN C. BRAZILE

12                                                              Presiding Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL